## Maggie Polk et al. v. Jeff. Chaison et al.

### No. 2510.

1. **Estoppel—Recitals.**—Parties and privies are estopped by recitals in the deeds which form part of the chain of title asserted by them.

2. **Same.**—Brown on May 8, 1835, obtained by deed one-half of the Bullock league with known calls for the north and east lines. July 26, 1840, Brown conveyed to Miller by deed, recorded July 30, the one-half league calling for the same north and east lines and also for *Williams* tract on west and Horton on south. July 14, 1844, Brown conveyed the one-half league he bought of Bullock May 8, 1835, to English, through whom defendants deraign title. *Held*, that the defendants were estopped to deny that

Brown owned the north half of the Bullock league at the date of his deed to Miller, under whom plaintiffs claim.

3. **Charges.**—The deeds making the title of the plaintiff prior and superior to the right of the defendants, and there being no dispute as to the heirship and coverture of the plaintiff, the court should have instructed the jury to find the title for the plaintiffs.

4. **Description in Deed.**—See description held sufficient to indicate *the north* half of the Bullock league.

5. **Improvements in Good Faith—Evidence.**—Under the suggestion of good faith improvements it is competent to allow defendants to prove that they never heard of the plaintiff, that plaintiff had not paid taxes upon the land, and that they (the defendants) had paid the taxes.

APPEAL from Jefferson.  Tried below before Hon. W. H. Ford. The opinion gives the facts.

*O'Brien & John,* for appellants.—The court was authorized and required in this case, upon the pleadings and evidence, to assume as proved without conflict of testimony, first, that plaintiffs and defendants claimed title under David Brown as a common source; second, that under such common source the title of plaintiffs was the oldest and therefore the best; third, there being no conflict or doubt in the testimony as to the identity of the north half of the James W. Bullock (or Bulloch) league of land as described in petition with that described in plaintiff's title papers, or defendants' title papers, or occupied or claimed by them, or as to question of whether defendants had constructive notice of the Miller deed, it was not necessary to leave these questions to the jury, but they should have been assumed by the court in favor of plaintiffs, leaving the only remaining issues of fact for the jury the heirship and coverture of plaintiff Maggie, and the court erred in not thus instructing the jury under the law and facts of this case.    Rev. Stats., art. 4802; Sellman v. Hardin, 58 Texas, 86; Tapp v. Corey, 64 Texas, 594; Parker v. Leman, 10 Texas, 116; Mitchell v. De Witt, 20 Texas, 299; San Antonio v. Lane, 32 Texas, 416; Hedgepeth v. Robertson, 18 Texas, 871; Austin v. Talk, 20 Texas, 164; Steagall v. McKellar, 20 Texas, 268; Chandler v. Fulton, 10 Texas, 21; Lea v. Hernandez, 10 Texas, 137; Wintz v. Morrison, 17 Texas, 372; Yarborough v. Tate, 14 Texas, 483; Earl v. Thomas, 14 Texas, 583; Hollingsworth v. Holshausen, 17 Texas, 47; McGreal v. Wilson, 9 Texas, 429; Hampton v. Dean, 4 Texas, 455; Hatch v. Garza, 22 Texas, 187; Wheeler v. Moody, 9 Texas, 378; Hardy v. De Leon, 5 Texas, 245; Reid v. Reid, 11 Texas, 593; Nations v. Jones, 20 Texas, 302; Bond v. Mallon, 17 Texas, 636; Roddy v. Kingsbury, 5 Texas, 152; Anderson v. Smitherick, 20 Texas, 111.

Notice.    Hawley v. Bullock, 29 Texas, 222; Martel v. Somers, 26 Texas, 560, Hines v. Perry, 25 Texas, 451; Bacon v. O'Connor, 25 Texas, 225; Briscoe v. Bronaugh, 1 Texas, 332; Weathered v. Boon, 17

Texas, 150; Powell v. Haley, 28 Texas, 57; Parks v. Willard, 1 Texas,. 354; Watkins v. Edwards, 23 Texas, 447; Vaughan v. Greer, 38 Texas,. 532; Douthitt v. Robinson, 55 Texas, 69; Mast v. Tibbles, 60 Texas,. 302–307; Kerr on Fraud and Mistake, 240, 241.

2. Whether.plaintiff Maggie Polk had ever paid taxes on her land or not, and whether the witnesses ever saw, knew, or heard of her before, were questions repeatedly asked and answered by leave of the court against. the objections of plaintiffs (and of course discussed by defendants' counsel), which were entirely immaterial and irrelevant to any issue in the cause, and were calculated to confuse, and impress unjustly and unfavorably to plaintiffs the minds of the jury.

*Douglas & Lanier* and *Tom J. Russell,* for appellees. — 1. The instrument read in evidence by plaintiff, dated July 26, 1840, purporting to be. a deed from David Brown to M. S. Miller for a part of the J. W. Bullock league, etc., is not sufficient upon the face of it to put a person upon notice that said deed conveyed to M. S. Miller the north half of the J. W. Bullock league as claimed in plaintiffs' petition, and said deed is too· indefinite to convey and pass title to said north half of the J. W. Bullock league for want of sufficient description of same. Rev. Stats, art. 4332;. Taylor v. Harrison, 47 Texas, 456; Kinney v. Vinson, 32 Texas, 127;. Wofford v. McKinna, 23 Texas, 36; Johnson v. Granger, 51 Texas, 42.

2. The defendants are all innocent purchasers for valuable consideration without actual or constructive notice of plaintiffs' claim to the land. Carter v. Hawkins, 62 Texas, 393, and authorities there cited.

3. John Collier, under whom all of the defendants claim and hold said lands respectively, was an innocent purchaser for valuable consideration of the lands in controversy, and all of the benefits arising and of. the rights acquired by Collier pass to his vendees, the defendants. Watson v. Flanagan, 14 Texas, 354.

4. The court did not err in admitting the testimony as to the nonpayment of taxes on the land and the non-claim of plaintiffs, such being admissible under the pleas of improvements made in good faith. Carter v. Hawkins, 62 Texas, 394; Holmes v. Buckner, 67 Texas, 107.

COLLARD, JUDGE.—The appellant Maggie Polk, plaintiff below, and the defendants claim title from David Brown as a common source, plaintiff under a deed from Brown to her father M. S. Miller, of date July 26th, 1840, duly recorded in Jefferson County, where the land is situated, on the 31st day of July, 1840, and defendants under a deed of Brown to· Wm. K. English, executed July 14th, 1844, and duly recorded August. 21, 1849. The deed to English is for the north half of the James W. Bullock league, and recites that Brown acquired it from Bullock,. the original grantee, by deed of date May 8th, 1835, the same deed.

offered in evidence by plaintiff. It follows then that defendants can not deny that Brown was the owner of the north half of the Bullock league by virtue of the deed of May 8th, 1835. The record of the deed to Miller in 1840 at the date of its registration affected English and defendants with constructive notice of the conveyance of the land therein described.

Some of the defendants insisted in the lower court and now in this court claim that they are innocent purchasers, because the deed to Miller does not describe the land intended to be conveyed with such certainty as to have informed them or put them upon inquiry as to what land was so conveyed. Plaintiff Maggie Polk 'asked the court to instruct the jury to find for her if the evidence showed she was the heir at law of M. S. Miller, and if the evidence also showed that she was married to L. B. Polk at the commencement of and during the possession of defendants. This instruction asked is predicated on the fact that the deed to Miller was executed and properly recorded before the date of the deed to English. It assumes that there is no issue of innocent purchasers. The court refused the charge, and submitted to the jury the issue of innocent purchasers as to all the defendants, set up only by a part of them. The refusal of the court to give the requested charge and the submission of the issue of innocent purchasers as to all the defendants are both subjects of error assigned by appellant. Should the question of innocent purchasers have been submitted at all? The deed to Miller conveys "all my (Brown's) right, title, and interest unto M. S. Miller, of the county of San Augustine, for and of one certain half league of land, * * * the said half league of land being situated, lying, and being in the county of Jefferson, Republic aforesaid, bounded as follows: By lands granted to the aforesaid David Brown as a colonist by the government of Coahuila and Texas, to the north; to the west by lands granted to the Williams; to the south by lands belonging to A. Horton; and to the east by the Neches Marsh, having a front on the marsh of 1250 Mexican varas and running back 6000 varas for quantity, and being two miles south of the town of Beaumont, containing one-half league, more or less, within the above described limits. Said land was granted by the government of Texas and Coahuila to the colonist James W. Bullock, and by said Bullock sold to said David Brown."

This deed identifies the land conveyed as half of the league granted James W. Bullock as a colonist by the government of Coahuila and Texas and that particular half conveyed by Bullock to Brown which the Engligh deed designates as the north half, of which defendants must take notice. The deed to Miller further shows that the land conveyed is on the north half of the Bullock league by bounding it on the north by lands granted to Brown as a colonist. This would be clear from the description whether the Brown league came down to the Bullock or not. It does extend down to the Bullock north line, as shown by the evidence

of Ingalls, county surveyor of the county for thirty years before the trial. The evidence shows that Bullock sold the south half of his league to A. Horton on July 5, 1848, but it is also shown that Horton was claiming the south half of the league long before this and before the deed to English, as he sold it by deed to Mathew Cartright February 15, 1842, duly recorded June 25, 1842. The deed to Miller refers to the Horton land as bounding the survey conveyed on the south. Ingalls swears it is only 1200 varas from the north line of the Bullock to the north line of the south half. The Miller deed called for 1250 varas front on the marsh. It seems though that Ingalls was mistaken and that there was error in the call in the deed, as the league is not so long on the north as it is on the south, and hence the distance from the north line to the north line of the south half if correctly run would be even more than 1350 varas, the distance across the league from north to south being 2700 varas.

It may also be noticed that 6000 varas west from the Neches Marsh will not reach the Charles Williams league by 2540 varas on the north line and considerably more on the south line of the north half of the Bullock. It is seen then that if we allow distance to control, the land conveyed by the deed to Miller will not reach to the north line of the south half nor to the west line of the league survey, and that only about 1200 or 1300 acres would pass by the deed. We are satisfied, however, that the intention clearly expressed in the deed was to convey the north half of the league. It conveyed all Brown's right, title, and interest in a certain half league out of the James W. Bullock league. What half? The half conveyed to Brown by Bullock, which by the deed to English under which defendants claim is declared to be the north half. How is it bounded? On the north by the Brown league, on the south by land of A. Horton (which is shown to be the south half of the league by Horton's deed to Cartright, executed and duly recorded before the deed to English), on the east by the Neches Marsh, and on the west by lands granted to the Williams. It does not appear that any land was granted to the Williams, but it does appear that the Charles Williams grant of one league lies on the west of the north half and a part of the south half of the Bullock league, and that the Bullock league field notes call for the southeast corner of the Williams league. The mistake in calling for land granted to "the Williams" instead of Charles Williams is patent and could not have misled anyone. The Charles Williams was evidently meant. Taking the entire description in the deed, the reference to boundaries therein with the light thrown upon it by the deed to English, we are in no doubt but that the land conveyed was the north half of James W. Bullock league, and that defendants are chargeable with constructive notice of all the facts which go to identify the land The Miller deed was on record when English bought, and with both of these

deeds before them they were bound to know what land was conveyed to Miller.

There was no conflict in the evidence as to the heirship of plaintiff Maggie Polk, nor as to her coverture during and before any occupancy of defendants except Frederika Wendt, who sustained her plea of limitation to 100 acres, and whose title was admitted by plaintiff on the trial.

The court under the evidence should have instructed the jury to find for plaintiffs against all the defendants except Frederika Wendt. This with a submission of the issues of improvements made in good faith was all the charge the case called for. Upon the issues of improvements made in good faith there was no error in permitting defendants to show that they were ignorant of the existence of Maggie Polk and her claim to the land, nor was there error in permitting defendants to show that they paid the taxes on the land and that plaintiff had not.

The cause ought to be reversed and remanded for a new trial.

*Reversed and remanded.*

Adopted January 22, 1889.