## MARTIN WHITE ET AL. v. F. J. HARRIS.

### No. 7167.

**1. Appeal Bond—Supersedeas.**—The appeal bond, on appeal to the Supreme Court, must be sufficient to support an action by the appellee; it must identify the judgment, be sufficient in amount, and conditioned as required by law. Unless such bond is filed an appeal does not operate as a supersedeas. See misdescription in date of judgment and in amount such as to render it void.

**2. Community Property—Trust.**—See testimony showing that the consideration paid for the property in litigation, and which was deeded to the wife of Martin White, was community property. Markward carried out a compromise made by White, advanced money, and took deed in his own name, and subsequently sold at a profit, and such profit was represented by the land in litigation, deeded by Markward to Mrs. White. Such trust was proved by parol testimony in conflict with the recitals in deed to Markward.

**3. Want of Diligence.**—Motion for new trial in which it appears that the testimony for want of which the motion is made could have been produced upon the trial, has no merit.

**4. Inadequacy in Price.**—Sheriff sale of property claimed by wife of defendant in execution as her separate property. At the sale the husband disclaimed ownership, and her own claim was asserted. *Held*, that the wife could not complain of inadequacy of price.

APPEAL from Lampasas. Tried below before Hon. W. A. BLACKBURN.

*A. G. Walker*, for appellants.—1. When an appeal and supersedeas bond is filed and approved by the clerk of the District Court, the appeal is perfected, and the District Court has no further jurisdiction of the case until passed upon by the higher court appealed to; and when said bond is so

filed and approved, the clerk has no option but to issue a supersedeas in case an execution has issued. Churchill v. Martin, 65 Texas, 367; Sayles' Civ. Stats., art. 1406; Zapp v. Michaelis, 56 Texas, 396; Shelton v. Wade, 4 Texas, 149; Gibbs v. Belcher, 30 Texas, 86.

2. John Markward being the owner in fee simple of the lot in controversy in November, 1881, he had a perfect right to give it to defendant Mary White. The deed from Markward to Mary White, dated November 22, 1881, was from Markward's statement a deed of gift. He was not indebted to either Martin White or Mary White, nor did they pay him for the lot. Neill v. Keese, 5 Texas, 24; Hubby v. Harris, 68 Texas, 91.

*W. B. Abney*, for appellee.—1. Parol evidence is admissible to prove that an instrument of writing which on its face purports to be an absolute deed was intended by the parties as a security for money; and the testimony of the witnesses Frazer, Gibson, and Baker was admissible as tending to prove that the deed from Frazer to Markward for the Cook tract of land was held by Markward as security for money advanced by him for White to fulfill the agreement made between Frazer and White, and to show that the real title was in Martin White. Hardie v. Campbell, 63 Texas, 296; Loving v. Milliken, 59 Texas, 423; Gibbs v. Penny, 43 Texas, 560.

2. An appeal bond, to operate as a supersedeas, must serve the uses and furnish the benefits contemplated by law; and an appeal bond is a nullity which fails to give the names of the parties to the suit, and fails to give the name of the party in whose favor judgment was rendered, and which misdescribes the date of the judgment, and also misdescribes the amount of the judgment, and also misdescribes the date from which interest is to be paid. Chambers v. Miller, 7 Texas, 75; Smith & Williams v. Parks, 55 Texas, 87; Messner v. Lewis, 17 Texas, 521; Estate of O'Hara, 60 Texas, 179; Hollis v. Border, 10 Texas, 277; Smith v. Cheatham, 12 Texas, 37.

3. As to irregularity of sale, and who can set up same: Hawley v. Bullock, 29 Texas, 225; Ayres v. Duprey, 27 Texas, 602; Boggess v. Howard, 40 Texas, 157; Riddle v. Turner, 52 Texas, 150; Payne v. Grosvenor, 18 Ala., 320; Foster v. Wiley, 27 Mich., 244; Bryan v. Hubbs, 69 N. C., 423; Freem. on Ex., secs. 75, 105.

4. On failure to tender back purchase money: Howard v. North, 5 Texas, 290; Burns v. Ledbetter, 56 Texas, 282.

COLLARD, JUDGE, *Section A.*—This suit was instituted in the District Court of Lampasas County, on the 11th day of April, 1889, by the appellee F. J. Harris against appellants Martin White and Mary White and against one Goodwin, for the east tenement of lot 7 in block 11, in the old town of Lampasas, the suit being in form of trespass to try title.

Goodwin disclaimed all title, except that he was holding as tenant of Mrs. White.

Defendants Martin White and wife filed general demurrer, special exceptions to the petition, and plea of not guilty. They also answered specially, setting up, that plaintiff claimed the land by virtue of sheriff's sale and deed under an execution issued by the clerk of the District Court of Lampasas County June 7, 1887, in cause number 929, Harriet Holly et al. v. Martin White, and that the execution was without authority of law and void: First, because it was issued under a judgment in said cause, May 21, 1887, after White had given notice of appeal and perfected the appeal by supersedeas bond filed the 11th day of June, within twenty days after adjournment of the court, which bond was approved by the clerk of the court. Second, because of the great inadequacy of the price bid by plaintiff at the sale, only $10, the reasonable value of the property being $3000. Third, because Martin White had no title to the property sold.

Mrs. White, joined by her husband, further set up, that the land was her separate estate, derived by deed to her from John Markward, of date the 22d day of November, 1881, which was duly recorded in the proper records of Lampasas County in November, 1881; that no part of the purchase money recited paid in the deed was paid by her husband out of their community estate, and that the note for $392.50, recited in the deed as having been given by her and her husband, was not paid by her husband, and it was so understood by the parties at the time that it was not to be paid out of community funds, and that Markward did not look to Martin White for such payment. It is also alleged that plaintiff had actual notice at the time of the sale that the lot was the separate estate of Mrs. White, and had his sheriff's deed placed upon record, that the same was a cloud upon her title, and she asked that it be cancelled.

Plaintiff filed general and special exceptions to the answer, and replied, that the appeal bond in cause number 929 was filed after execution had issued, and that the same was insufficient to authorize the clerk to issue a supersedeas thereon, or to stay the judgment; and that the execution was held up by plaintiff in cause number 929 to give White time to sue out a writ of error, which he failed to do. That Martin White's attorney, acting for him, gave notice at the sale that he did not own the property, and thus deterred persons from bidding more for the land. That the debt which passed into the judgment in suit number 929 was existing at the time of the deed by Markward to Mrs. White; that Martin White was then, was for a long time before, and is now insolvent, and whatever was paid to Markward as a consideration to him for the land was paid out of the community estate of White and wife, and the property at the time of the sale was their community.

May 25, 1889, the cause was tried by the court without a jury, and

judgment rendered for plaintiff for the land, from which Martin and Mary White have appealed and assigned errors.

The court below, among other things, found that the supersedeas bond in cause number 929, filed by White, was a nullity, because of misdescription of the date and amount of the judgment. The question of the sufficiency of the bond as a supersedeas bond is raised by several assignments of error. The execution issued June 7, 1887; the court adjourned May 29. White filed his bond for appeal and supersedeas June 11, 1887, but no writ of supersedeas was issued. The sheriff levied on the property in suit on the same day the execution issued. On the 11th day of June, 1887, he advertised the property for sale, to take place on the 5th day of July, at which time the sale was continued, and the property was advertised again to sell on the 2d day of August, 1887, the first Tuesday of the month, and on that day the sale took place, and the property was sold to Harris on his bid of $10, to whom deed was made in due form by the sheriff. Mrs. White's attorney, by direction of White, gave notice at the sale that the property was the separate estate of Mrs. White.

The bond styled the cause "Harriet Holly et al. v. Martin White, No. 929;" described the judgment as of date the 19th of May, 1887, when its date was May 21, 1887; stated the amount recovered as $300, with interest at 8 per cent per annum from the 7th of October, 1876, when the exact amount was $554.80, including interest to date of judgment, and interest thereon at 8 per cent from date of judgment.

The bond recited, that "Whereas the said Harriet Holly et al. recovered judgment," etc., without giving the name of the other plaintiff; it was made to Harriet Holly and Jackson Holly (doubtless the other plaintiff); was in more than double the amount of the judgment, to-wit, $1209.33⅓, and was conditioned as the law directs for a supersedeas bond. It was approved by the deputy district clerk on the 11th of June, 1887, the day of filing, the clerk being absent, who, on his return, informed White that he could not issue a supersedeas thereon. The case was taken up to the Supreme Court, and the appeal was dismissed on motion of the appellee, upon what ground does not appear.

It may be said that the right to a writ of supersedeas does not always depend upon the fact that the jurisdiction has attached in the Supreme Court by virtue of the bond. The bond must be good as a supersedeas bond, not merely as a bond that would give the Supreme Court jurisdiction or answer in place of a cost bond. Zapp v. Michaelis, 56 Texas, 396. The test of a good supersedeas bond is, that it will not only confer jurisdiction on the Supreme Court, but will authorize the court to render judgment on appeal against the sureties, in accordance with original decree against the principal; or, as was decided in Tucker v. The State, *for use of another* (11 Maryland, 322): the bond must be sufficient to support an action by the obligee.

The rule is, that the bond must *identify the judgment*, be in sufficient amount, and conditioned as required by law.   Herndon v. Bremond, 17 Texas, 434.   The bond in this case described a judgment of a different date from the one upon which the execution issued.   This is not merely an omission of matter of description, but a misdescription of the judgment, which may refer to another judgment.   This misdescription becomes more important in view of the fact that the bond fails to state who the parties were recovering the judgment; and in view of the further fact, that while the amount of the judgment described is nearly the same as the other judgment, it is differently described, as a judgment for $300 with 8 per cent interest from October 7, 1876, instead of for the exact sum of $554.80 with 8 per cent from the date of the judgment.   The bond was intended as a supersedeas bond.   The action of the Supreme Court in dismissing the appeal must have been upon the ground that the bond was neither good as a cost bond nor as a supersedeas.   Reid v. Fernandez, 52 Texas, 381.   The bond failing to comply with the statute, did not stay the execution nor suspend the enforcement of the judgment.

The foregoing will dispose of several assignments of error dependent upon the same question.

The next most important question is raised by the assignment that the court erred in its finding that the lot and tenement in suit, at the date of the levy, was community property of Martin White and wife.

The following circumstances, as shown by the evidence adduced for plaintiff, will give us the basis of the court's finding:   L. S. Frazer recovered a judgment against Martin White;  had execution levied on 2000 acres of the Cook survey belonging to White;  bought it in at the sale for a very small price;  sued White for the land and recovered judgment, when the parties, rather than appeal further to the courts, entered into a compromise, in writing, whereby White agreed to pay Frazer $350 for, and Frazer to quitclaim to White, the Cook land, on January 27, 1881; it being understood that if the $350 was not paid on or before the stated time Frazer would not be bound to make the deed.   It was also agreed that a receipt from J. A. Abney for $125 should be received by Frazer as that amount of money paid by White on the obligation.   The agreement was dated the 27th of November, 1880.   On the 26th day of January, the day before the contract was to be performed by White, the deed was made to John Markward instead of White, for the expressed consideration of $286.30.   Frazer testified, that the deed was made in compliance with his agreement with White, and that it was understood at the time that Markward was advancing the money for White;  that he was directed by some one to make the deed to Markward, and he went to him and received from him $100 in money, at which time Markward "said something about not liking to advance the money."

A. F. Baker testified, that he had a conversation with Markward in the fall of 1881; they went and looked at the Cook land, and the question of price came up, when Markward said, "You will have to see Major White and make the trade with him." Witness saw White, agreed with him about the price of a part of the Cook land, paid him $300, and gave him his note for over $500 as consideration for the land he bought; took White's warranty deed and Markward's quitclaim. He had Markward to make deed, because he knew Markward had a deed from Frazer.

J. P. Gibson, witness for plaintiff, testified: I drew the agreement between White and Frazer. I was representing White at the time as an attorney in trying to make a settlement with Frazer about the Cook tract, which had been purchased by Frazer at execution sale against White. I wrote the deed from Frazer to Markward. It was the agreement, as I understood it, between Frazer, White, and Markward at the time, and it was my understanding, that White was to let the deed from Frazer be taken in the name of Markward, and that Markward should hold the deed as security for the money he was advancing for White in making the settlement with Frazer.

Abney was paid his $125 on the 26th of January, 1881, called for in the Frazer-White agreement; that is, $44.50 by White and Gibson and $80.50 by Markward.

Mrs. White claimed the land in suit by deed executed to her by Markward on November 22, 1881, for an expressed consideration of $1707.50 paid and secured to be paid by Mary White, as follows: $1315 in cash and one promissory note of even date herewith, executed by White and his wife, for $392.50. The deed contained a special warranty.

In reference to this deed and the entire transaction, Markward testified, the consideration was not properly stated; that "the cash payment recited as $1315 was not paid to me by Martin White or Mary White either. It was this way: I had bought from Mr. Frazer a portion of the J. R. Cook survey, being the same land purchased by Frazer at execution sale against Martin White. I had bought it cheap. Subsequently, on about the 11th of November, 1881, I sold part of this Cook survey to Mr. Chatham, and he paid me $1000 cash, and at about same time I sold A. F. Baker about 700 acres, and he paid me part cash and gave me his note for balance of something over $500, payable January 1, 1882. Lands had gone up, and my profits on the purchase were so much, that I concluded that as White had about lost everything in suits, that I would *give* to Mrs. White the lot described in plaintiff's petition. *The consideration named in my deed to Mrs. White was paid with the money received from Chatham and Baker.* I felt sorry for Mrs. White, and as my profit was about the value of the house and lot in controversy, I decided to deed her the house and lot, and did so. Neither Martin White nor Mary White paid me the note for $392 named in my deed. I took and held said $392

note until Baker paid his note, when I surrendered the same. I never looked to Martin White or Mary White for the payment of said $392 note. At the time I deeded said house and lot to Mrs. White it was worth $1707.50. On August 2, 1887, it was worth $2500. I know nothing of any agreement for compromise between White and Frazer." On cross-examination, he testified: "I did not buy the Cook tract of land from L. S. Frazer or take a deed in my name at the instance or request of Martin White. I bought the Cook tract purely as a matter of speculation, and of my own accord, as I thought it was cheap. I had no understanding whatever with White about advancing any money to Frazer for him. Martin White did not execute his note for the amount I paid on the land I got from Frazer. He executed his note to me about that time for about the sum of $350, but this was for store account he had been owing me."

The conclusion is easily attained from the foregoing testimony that Markward was not the real owner of the Cook land, through the transaction with Frazer, but that he held it in trust for Martin White, and to secure himself for advances made for White in complying with his obligation to Frazer; that he, Markward, was fully paid and satisfied for the advances made out of proceeds of sales, and that with other profits of sales of the Cook land he bought and paid for the lot and tenement involved in this suit. Under this view of the case, abundantly sustained by the testimony and the evidence, the land in suit was community of Martin White and his wife, and was subject to the execution in favor of Harriet Holly.

It is said that the court erred in admitting in evidence the findings of the court in cause No. 929, Harriet Holly et al. v. Martin White. There was nothing more in the findings than was concluded by the judgment itself, and their admission, while immaterial, was not prejudicial to the defendants.

The review we have made of the facts shows the relevancy and importance of the agreement between Frazer and White as evidence in the cause. The testimony connected Markward and Mrs. White with it in such way as to show that the conveyance to her was procured by expenditure of community estate of herself and her husband. There was no error in admitting the agreement.

The testimony of Frazer and Gibson, to the effect that it was understood between Frazer, White, and Markward, at the time of the deed from Frazer to Markward, that it was not intended to convey the absolute title to Markward, but was intended to secure Markward for advances made for White to Frazer, was objected to, on the grounds, first, that the deed was the best evidence, and its recitals could not be contradicted by oral testimony of the witnesses, unless there was a mutual understanding between Frazer and Markward to that effect; second, because the property conveyed was no part of the land in controversy.

The admission of the testimony over the objections made is assigned as error.

The bill of exceptions shows that the testimony of the witnesses was to the effect, that it was the understanding of Frazer, White, and Markward that the deed was intended as security to Markward; if so, it was mutually understood between Frazer and Markward. It is true Markward denies that he knew anything about the agreement between Frazer and White, and that he bought the land on a speculation for himself, but the circumstances strongly indicate the contrary. Frazer testified, "I so understood at the time that Markward was advancing the money for White;" that he went to Markward by direction of some one, received from him $100, at which time Markward complained about advancing the money. The witness had the right to state his understanding of what Markward was to do, and how he was to hold the property. Other facts showed that it was the understanding of all the parties.

Gibson wrote the deed from Frazer to Markward, and says "it was the agreement, as I understood it, between Frazer, White, and Markward at the time, and it was my understanding," etc., stating the agreement. There is nothing here to show that the agreement was not mutual. The statement of Frazer as to what he understood would not, standing alone, prove that Markward understood the same thing, but there can be no doubt as to Gibson's testimony that he understood the agreement to be mutual.

It is too well settled to require citation of authority, that a parol trust may be engrafted on a deed absolute on its face.

There was nothing in the objection that the deed of Frazer to Markward was to other land, and not the land in controversy. The proceeds of it went into the land in controversy, and both tracts were in the same attitude.

There is another bill of exceptions to Gibson's evidence incorporated in the statement of facts, that he was attorney for White in the various transactions, and that his information concerning them would be privileged. If this objection should be tenable it can not be considered, because the statement of facts in which the bill of exceptions is found was not filed until after the term of the court. The court adjourned on the 29th of May, 1889. The statement of facts was signed by the presiding judge and filed in court on the 5th day of June, 1889. Rev. Stats., art. 1364; Lockett v. Schurenberg, 60 Texas, 611.

It is insisted by appellant, that the court erred in overruling defendants' motion for a new trial, as the third ground thereof clearly called the court's special attention to the error in admitting the testimony of Frazer and Gibson, and the court should have granted a new trial to enable defendants to rebut said testimony. The third ground set up for a new trial was,

that "defendants' counsel was surprised at the admission of the testimony of Frazer and Gibson, as he had been informed by White and Markward that the deed from Frazer to Markward was an absolute deed; that Markward did not advance the purchase money for White, but wholly for himself, and that White did not claim any title through the Frazer deed, and that there was no agreement between them that Markward would account to White for the proceeds of sale of the Cook land, etc.; that he, Markward, had made the deed to Mrs. White more as a gift and to gratify her than for any legal or moral obligation; that defendants' counsel could not foresee from the pleadings the necessity of testimony to rebut the testimony of Frazer, Gibson, and Baker as to the acts and intentions of Markward and White in regard to the sale by Frazer to Markward."

In support of the motion the affidavit of Martin White was filed, to the effect, that the deed of Frazer to Markward was not intended as a mortgage to secure Markward for money advanced; that affiant did not execute any note to Markward on that account; and that there was no agreement between him and Markward that the latter would convey the Cook land to affiant upon payment of the money advanced, if any, or any part. thereof.   There was no merit in the motion; no reason is shown why White was not put on the stand; no time was asked to procure the testimony.   The court could not grant a new trial in order to allow defendant. to rebut testimony on another trial that might have been had at the first trial, no excuse being given for the failure to offer the testimony.   Defendant can not withhold testimony and obtain a new trial to present it on another trial.

Mrs. White can not complain of the low price for which the lot sold. It was caused by the notice given at the sale that it was her separate estate.   But if it were not so caused, under her claim that it was her separate property, she was not injured.   Inadequacy of price was wholly immaterial and foreign to the issue contended for by her.

We have considered, directly or indirectly, every question raised by the assignment of errors, and find no sufficient ground upon which to reverse the judgment of the court below.   We are of the opinion it should be affirmed.

*Affirmed.*

Adopted May 24, 1892.