## UNKNOWN HEIRS OF CRISWELL et al. v. ROBBINS.

(Court of Civil Appeals of Texas. San Antonio. Dec. 18, 1912.)

1. EXCEPTIONS, BILL OF (§ 40*)—APPEAL AND ERROR (§ 564*)—STATEMENT OF FACTS—TIME FOR PREPARING AND SIGNING—EXTENSION OF TIME.

Under the statute providing that an order extending the time for the preparation and filing of bills of exceptions and statements of facts must be entered of record, an order of extension made during vacation and while the judge is absent from the state is ineffectual.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 44, 45, 57–64; Dec. Dig. § 40;* Appeal and Error, Cent. Dig. §§ 2501–2506, 2555, 2558, 2559; Dec. Dig. § 564.*]

2. EXCEPTIONS, BILL OF (§ 40*)—TIME TO FILE—STATUTORY PROVISIONS.

Under Acts 32d Leg. c. 119, § 7, providing that any statement of facts filed before the time for filing the transcript in the appellate court expires is filed in time, a statement of facts is filed in time when filed before the expiration of the time for filing the transcript in the appellate court, but the statute does not include bills of exceptions which are still under the law as to extension of time.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 44, 45, 57–64; Dec. Dig. § 40.*]

3. EXCEPTIONS, BILL OF (§ 39*)—INCORPORATION OF BILL OF EXCEPTIONS IN STATEMENT OF FACTS—EFFECT.

Bills of exceptions may be incorporated in the statement of facts; but, unless the statement of facts is filed within the time prescribed for the filing of bills of exceptions, they will not be considered on appeal.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 51, 52, 54–56, 60; Dec. Dig. § 39.*]

4. APPEAL AND ERROR (§ 938*)—TIME TO FILE BILL OF EXCEPTIONS—EXTENSION OF TIME—PRESUMPTIONS.

Where an application for an extension of time for the filing of bills of exceptions was made by appellant alone, there was no presumption that appellee agreed to the extension, and the bills could not be considered on the theory that the parties agreed to an extension of time for filing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3795–3803; Dec. Dig. § 938.*]

5. EVIDENCE (§ 358*)—PLATS—ADMISSIBILITY.

Where in trespass to try title the evidence showed that an experienced surveyor made a plat from field notes in the several deeds in partition, and the parties interested in the partition acted on and ratified the deeds, the plat was properly received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1500–1508; Dec. Dig. § 358.*]

6. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.

Where the statement fails to disclose any finding and fails to point out any defect in the evidence, an assignment of error complaining of a finding will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

7. ESTOPPEL (§ 30*)—RECITALS IN DEEDS—CONCLUSIVENESS.

Recitals in a deed are binding not only on the immediate parties thereto but on all those who claim under it, and a party, in obtaining title, obtains title to a specified tract through a deed containing recitals, and he is estopped from claiming any but such tract.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 74; Dec. Dig. § 30.*]

8. ADVERSE POSSESSION (§ 13*)—EVIDENCE—SUFFICIENCY.

Where one fenced an entire tract claimed by him in 1882, and continuously used the land for grazing cattle for nearly 30 years, and paid the taxes during such period, he established a title by limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65–76; Dec. Dig. § 13.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by Fred S. Robbins against the Unknown Heirs of Criswell and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Gaines & Corbett, of Bay City, and W. H. Baldwin, of Rockport, for appellants. Thomas H. Lewis, of Bay City, and Lewis R. Bryan, of Houston, for appellee.

FLY, C. J. This is an action of trespass to try title to the John Y. Criswell league of land in Matagorda county instituted by appellee against the unknown heirs of John Y. Criswell, deceased, the unknown heirs of James H. Criswell, deceased, the unknown heirs of Mary Jane Hadden, deceased, the unknown heirs of John Primm, deceased, the unknown heirs of John Elliott, Jr., deceased, the unknown heirs of Conrad Dietrich, deceased, C. R. Dietrich, Julia Owens and her husband, T. A. Owens, and Mary Clark and her husband, William Clark. All of the unknown heirs answered through their attorney ad litem by general demurrer, general denial, and plea of not guilty. The other defendants made like answers and further disclaimed as to all the land except an undivided interest of 560 acres, being the share of James H. Criswell in said league of land. A jury was waived and a trial by the court resulted in a judgment in favor of appellee against all of the defendants for the league of land, from which judgment C. R. Dietrich,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the Clarks, and the Owens gave notice of appeal. We think the findings of fact are sustained by the statement of facts and they are approved by this court, and they, with the facts hereinafter mentioned, will constitute the conclusions of fact of this court.

It appears that the judgment was rendered in this cause on June 15, 1911; that the term at which it was rendered was one that could continue for more than eight weeks; that the term ended by adjournment on July 14th; that on that day a transcript of the evidence was filed in the court by the official stenographer and was approved by the trial judge; that on July 16th the trial judge left the state and went to Virginia and remained out of the state of Texas until August 26th, and the statement of facts which "was based upon and in conformity with the statement filed July 14, A. D. 1911," was approved by the trial judge on September 16, 1911, at least three weeks after his return.

There are filed in this cause three documents purporting to contain a statement of the facts proved on the trial. The first, filed on July 5, 1911, has the certificate of the stenographer appended to it and nothing else; the second, filed on July 14, 1911, is certified to by the stenographer and approved by the trial judge; and the third filed on September 16, 1911, and agreed to by attorneys of all the parties and approved by the trial judge. The last statement of facts contains the bills of exceptions. An order was granted extending the time of filing the statement of facts and bills of exception for 30 days after adjournment; that is, until August 13, 1911. The term of court at which the cause was tried could by law continue more than eight weeks, and the 30 days granted by statute would have commenced at the time the judgment was rendered but for the order of the court. Before the expiration of the 30 days, namely, on July 25th, when appellants still have about 20 days of the time remaining, without any effort being made to prepare the statement of facts although the transcript of the stenographer was on file, an application was made to the judge, who was in Virginia, to grant an extension; the ground for such extension being that the official stenographer would be unable to prepare a transcript of the evidence. At that very time the transcript prepared by the stenographer was on file in the district court of Matagorda county, which had been approved by the district judge, and the latter states that the "statement of September 16, 1911, is based upon and in conformity with the statement filed July 14, 1911." No other stenographer's transcript of the evidence was prepared after the one filed on July 14, 1911. These facts are stated as bearing on the question of diligence, regardless of the attempted 40 days' extension made in Virginia.

[1] The order of extension of 40 days was made during vacation and while the judge was absent from the state. If the law is correctly construed in Railway v. Cox (Sup.) 140 S. W. 1078, the order entered in vacation was invalid, and the attempted extension of time was futile and vain. Appellants state in their answer to the motion to strike out the statement of facts that the "decision of the Supreme Court in Pecos & N. T. R. R. Co. v. Cox (Sup.) 140 S. W. 1078, has no application or relevancy whatsoever to the facts in this case." If not, it would be hard to determine to what the opinion would apply. The following language from Hamill v. Samuels (Sup.) 133 S. W. 419, adopted in the Cox Case, seems to cover the case before us completely: "The language of the statute does not express that the order must be entered at the same term of the court at which the trial was had, but is general in its terms that it must be granted by an order entered of record, which we construe to mean that it must be entered in open court, or while the court is in session, but not necessarily during the term of the court at which the trial was had." The Cox Case has been followed in several instances. Hines v. Sparks, 146 S. W. 290; Harris v. Camp, 148 S. W. 597.

[2] Appellants had ample time to have prepared a statement of facts during the 30 days granted to them after adjournment, but the record fails to disclose that any effort whatever was made to obtain a statement; but before one-third of the time was expired all energy was directed towards getting an additional extension of 40 days. All that has been said about the extension of time has been with a view to the bills of exceptions which are embodied in the statement of facts, for under the provisions of the Acts 32d Leg. c. 119, § 7, it is provided "that any statement of facts filed before the time for filing the transcript in the appellate court expires shall be considered as having been filed within time allowed by law for filing the same." What purpose the Legislature had in view in passing such a clause, which practically sets aside all of the other provisions as to the time in which statements of facts shall be filed and renders the question of extensions a mere abstraction, is utterly inconceivable. But there it is, and under its provisions the statement of facts, although filed beyond the time legally given by the court must be held to have been filed in time. But that provision would not lend any aid to the bills of exception embodied in the statement of facts, because they are not mentioned in the sweeping provision as to statements of facts. The bills of exceptions are still under the law as to extensions of time, as is apparent from the language of the law of 1911 which was in effect when this cause was tried on June 15, 1911. It follows that, although under the law of 1911 we are compelled to consider the statement of facts,

the bills of exceptions cannot be considered because filed out of time.

[3] It has been the uniform rule in Texas that bills of exceptions may be incorporated in the statement of facts, but that they will not be considered unless the statement of facts is filed within the time prescribed by law for the filing of bills of exceptions. Howard v. Mayor, 59 Tex. 76; Railway v. Eddins, 60 Tex. 656; Tom v. Sayers, 64 Tex. 339; Ivey v. Williams, 78 Tex. 685, 15 S. W. 163; Schaub v. Brewing Co., 80 Tex. 634, 16 S. W. 429; White v. Harris, 85 Tex. 42, 19 S. W. 1077.

[4] There is no pretense in this case that the parties agreed to an extension of time as to the bills of exceptions, and, the application for an extension having been filed by appellants alone, we do not think that a presumption can arise that the appellee did agree to the extension.

The first, second, third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments, being based on bills of exceptions which were not filed in the time prescribed by law, cannot be considered.

[5] The eighth assignment, which presents error in the court in permitting the plat of the land to be introduced in evidence, cannot be sustained. The land was divided in 1847 among the heirs of John Y. Criswell to whom the land in controversy was granted by the Mexican government on June 15, 1831. On November 28, 1839, Leroy V. Criswell was appointed the administrator of the estate of John Y. Criswell, deceased, and at the December term of the probate court of Fayette county the administrator applied for a partition of the land among the heirs of John Y. Criswell, naming them as follows: Leroy V. Criswell, Joseph E. Criswell, Andrew J. Criswell, William V. Criswell, John Y. Criswell, James H. Criswell, Candace Cottle, and Mary Jane Cottle. The application for partition was granted by the probate court, and commissioners were appointed. No report of the commissioners or order of confirmation was introduced in evidence, but on March 25, 1847, N. W. Faison, as clerk of the probate court of Fayette county, executed deeds to each of six of the heirs of John Y. Criswell— that is, all of them except James H. Criswell and Mary Jane Hadden—in which each lot was described by number and quantity of acres and by metes and bounds. Each of the deeds contained the following recitals; the number of the lot, the name of the heir, and number of acres being omitted in copy of the recital: "That heretofore, to wit, on the 22d day of December, 1841, the petition of Leroy V. Criswell, one of the heirs of John Y. Criswell, deceased, was filed in my office, praying for an order of the honorable probate court of said county for a partition of a league of land belonging to the estate of John Y. Criswell, deceased, lying in the county of Matagorda, and afterwards, to wit, at a regular term of said court held in the town of La Grange, county aforesaid, on Monday, the 30th day of October, A. D. 1843, the following orders were made, to wit: Ordered by the court that Peter De Morse, Thomas J. Adams, Lewis De Morse, and John De Morse, citizens of Matagorda county, be and they are hereby appointed commissioners to partition the league of land granted to John Y. Criswell, ordered by the court the said commissioners repair to said league of land, and there, in conjunction with the county surveyor of Matagorda county, proceed to partition said league of land between the heirs of said John Y. Criswell, deceased, and afterwards, to wit, on the 30th day of October, A. D. 1843, a writ was issued to the sheriff of Matagorda county commanding him to summon the aforesaid Peter De Morse, Thomas J. Adams, Lewis De Morse, and John De Morse, in conjunction with the county surveyor of said Matagorda county, to repair to the aforesaid land and partition the same between the heirs as aforesaid, and that it appears from the records of said court that said league of land was partitioned in accordance with the before recited order of said court, and it further appears that from said records that lot or survey of said partition was allotted to ——————, one of the heirs of John Y. Criswell, deceased, do now proceed to make and deliver to the aforesaid a quitclaim deed to the aforesaid lot or survey —— containing —— acres of land, a part of the league of land as aforesaid granted to John Y. Criswell." Lots four and six were not conveyed by Faison, but on January 21, 1850, James H. Criswell conveyed to James Stanley all of his interest in the Criswell league, and on February 11, 1850, Stanley conveyed that interest to George Boyer, describing it as lot No. 6 in the partition of the Criswell league which was apportioned to James H. Criswell. On June 22, 1876, Eliza Schultz and husband and Virginia Fitzgerald and husband, claiming to be the heirs of Mary Jane Hadden, conveyed to Fletcher Layton lot 4 in the partition of the Criswell league. Appellee, an experienced surveyor, made the plat objected to from the field notes in the several deeds from Faison to the six Criswell heirs. The court did not err in finding that the plat was a correct one. The immediate vendee of James H. Criswell ratified the partition in his deed to Stanley. The widow and children of James H. Criswell conveyed their interest to Layton. The evidence tends to show that every one interested in the partition acted on and ratified it. Even in the instrument executed by James H. Criswell he names the amount of land that fell to him in the partition.

[6] The twenty-first assignment of error complains of a conclusion of the trial judge that appellee showed title by mesne convey-

ances to all of the land. The statement fails to disclose the finding of the trial judge, and fails to point out any break in the title of appellee. The assignment is overruled.

[7] The twenty-second assignment of error complains that the finding of fact as to limitation was an error. We think that there is evidence to justify the finding that the title to the land is in appellee by five and ten years' limitation. It is the contention, however, of appellants that the evidence shows that 500 or 600 acres of the land were not inclosed by appellee, and therefore the statutes of limitation did not run as to them. Appellants are claiming only the interest of James H. Criswell in the Criswell league; that is, 560 acres of land. Their claim to the land is through the bond for title from James H. Criswell to James Stanley, who sold to George Boyer, who bequeathed the land to Conrad Dietrich, of whom C. R. Dietrich, Mary Clark, wife of William Clark, and Julia A. Owens, wife of T. A. Owens, are the only heirs at law, and as such are the owners of whatever right or interest Conrad Dietrich and George Boyer may have had in the land. In the deed from Stanley to George Boyer the land is described as a tract of land "numbered six (6) in the act of partition of the aforesaid league, as divided amongst the heirs of him, J. Y. Criswell, deceased, as may be seen by referring to the records of the county aforesaid and therein apportioned to James H. Criswell, containing five hundred and sixty acres (560) more or less." The recitals in that deed bind, not only the immediate parties thereto, but all those claiming under it. In that deed the partition of the estate is recognized and ratified, and appellants are confined to a claim to lot No. 6 in that partition. If they did not obtain title to lot 6 through that deed, they have none whatever. Those recitals estop them from claiming any but lot No. 6. William v. Chandler, 25 Tex. 4; Kimbro v. Hamilton, 28 Tex. 560; Peters v. Clements, 46 Tex. 114; Polk v. Chaison, 72 Tex. 500, 10 S. W. 581; Corzine v. Williams, 85 Tex. 499, 22 S. W. 399. The evidence discloses that if any of the land was not fenced it was 500 or 600 acres on the south of the league, but the plat shows that over 1,100 acres of land lie between lot No. 6 and the south line of the league, and it is apparent that the 500 or 600 acres not fenced was not claimed by appellants.

[8] It may be stated in this connection that appellee testified: "I fenced the entire J. Y. Criswell league in 1882. I put a good barbed-wire fence around it, and used the land for grazing cattle continuously ever since. I have kept up the fence. I have paid all taxes on the land every year since 1882; that is, my brother paid taxes on a part of it, and I paid taxes on the balance. I have rendered the entire league for taxes each year, and have the receipts for the taxes paid." He afterward stated that his fence was at first above the south line of the league, and there was some of the land in Freddie Robbins' pasture below, "but the entire league was fenced in 1882 with other lands." The evidence clearly established a title by limitations in appellee to the land claimed by appellants, and, even if appellants had obtained full benefit of all the bills of exceptions, they could not have attacked the judgment in this court to any advantage.

The judgment is affirmed.