WILLIAM PALM ET AL. v. IGNAC CHERNOWSKY.

Decided March 5, 1902.

</div>

**1.—Deed Absolute as Mortgage—Charge—Degree of Proof.**

While, in order to authorize a finding that a deed absolute on its face was intended as a mortgage, such intention must be shown by the evidence with clearness and certainty, it is not proper to so instruct the jury.

**2.—Jury—Misconduct—New Trial.**

Where plaintiff and a friend held private conversation with jurors in recess of court during the trial, plaintiff treating a juror in a saloon and talking with him at length in a back yard there, such misconduct, in the absence of explanation or denial, required the granting of a new trial.

**3.—Fraud Against Creditors—Homestead Right.**

The grantee in a deed absolute on its face, but intended as a mortgage and made in fraud of grantor's creditors, can not be set up as against their claims the homestead rights of the grantor in the property.

Appeal from Austin. Tried below before Hon. L. W. Moore.

*J. H. Shelburne* and *Searcy & Garrett,* for appellants.

*A. Chesley,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—The appellee, claiming to be the owner of the property in controversy, on November 3, 1900, sued out a writ of injunction against appellant, William Palm, sheriff of Austin County, and R. W. Thompson restraining them from selling said property under an order of sale issued out of the District Court of Runnels County, in a certain suit wherein R. W. Thompson was plaintiff and Joseph Metijka was defendant.

The defendants answered by general denial, and the defendant R. W. Thompson by special answer set up that the property in controversy belonged to Joseph Metijka. That the insrument under which appellee claims, while in form a deed, was in truth and in fact a mortgage and given for the purpose of securing a debt owing from Joseph Metijka to appellee. That said debt had been fully paid off and that said Ignac Chernowsky held the title to said property in trust for Joseph Metijka, and that the same was subject to the attachment lien of R. W. Thompson in his said suit against said Joseph Metijka. That the said Ignac Chernowsky and Joseph Metijka, for the purpose of defrauding the creditors of said Metijka, one of whom was the appellant R. W. Thompson, had conspired to place the title of said property in the name of said Ignac Chernowsky and to keep it there until the same could be sold, when the proceeds thereof are to be turned over to the said Joseph Metijka.

The case was tried before a jury and resulted in a verdict and judgment in favor of appellee.

The evidence in the case is conflicting upon the issue as to whether the deed to the property under which appellee claimed title was in fact only a mortgage which had been discharged by the payment of the debt to secure which it had been executed. Such being the state of the evidence the trial court instructed the jury as follows:

"The deed is regular in form, sufficient to convey the title and to constitute a sale of the land, and unless the defendants show by proof positive, certain, and satisfacory, that it was the intention of the parties at the time of the execution that it should be a mortgage security only for the debt from plaintiff to Metijka, then you shall find for the plaintiff."

This charge is complained of by appellant in his first assignment of error. While it has been frequently held by our courts that to authorize a finding by a court or jury that a deed absolute on its face was only intended to operate as a mortgage, such intention must be shown by the evidence with clearness and certainty, it is now well settled that it is not proper to so instruct the jury. Prather v. Wilkins, 68 Texas, 184; Neyland v. Bendy, 69 Texas, 713; Baylor v. Hopf, 81 Texas, 641; Washington v. Eastham, 56 S. W. Rep., 78; Smith v. Eastham, 56 S. W. Rep., 218.

The second and third assignments predicate error upon the refusal of the court below to grant a new trial because of the misconduct of certain members of the jury and of certain improper and questionable transactions between appellee and members of the jury during the trial of the case. The matters complained of by these assignments are set out in the motion for a new trial, as follows:

"Because of the misconduct of two of the jurors trying the said cause, in this, that one of the jurors, John Bolton, permitted the plaintiff to approach him on Thursday morning, just before the opening of the court, and only a short time before the commencement of the ar-

gument of the said cause the plaintiff went alone in the saloon of Otto
Granan with the said juror, and after treating the said juror called
him back in the back yard of said Granan's saloon, where they re-
mained in conversation some time; they then returned to the bar of the
said saloon where plaintiff again set them up to the said juror; that
no one was present during this conversation in the back yard behind
the saloon, and the tone of the conversation between the plaintiff and
the said juror was not loud enough to be heard by anyone on the inside
of the said saloon or building; that the aforesaid conversation was
private between the said plaintiff and juror, and that plaintiff had no
motive in treating said juror and having said conversation with him
other than to influence him in his behalf as a juror.

"That Otto Ueckert, one of the jurors trying the said cause, permitted
himself to be approached by one of the friends and strikers of the plain-
tiff in the following manner, to wit: That on Thursday after the
counsel had closed their argument and after the court had read its
charge to the jury, and the jury under the instructions of the court
were permitted to go to dinner with further instructions to return im-
mediately and procure the papers from the clerk and then retire to the
jury room to consider of their verdict; that before the jury had re-
turned from dinner the said Otto Ueckert permitted one Adolph Wal-
lecek to approach him and with him proceeded to one of the farthest
corners of the court room, where they engaged in earnest conversation
for several minutes; that the said Wallecek was in the town of Bellville
during the trial of the said cause acting as the friend and striker of
the plaintiff; that he had no other business with the said juror other
than to talk to him about the case and advise him to assist in rendering
a verdict for the plaintiff; that the said Wallecek was not a witness in
the said cause and had no other business in the town of Bellville where
he does not reside, other than to work in the interest of plaintiff."

This motion was sworn to by the appellant, and in support of the
allegations therein the following affidavits were filed by him in the
court below:

"The State of Texas, County of Austin.—Before the undersigned
authority on this day personally appeared Gus Sanders, who after being
by me duly sworn on his oath, says that he is the saloonkeeper and bar-
tender for Otto Granan, in the town of Bellville, in said county; that
on Thursday morning, June 20, 1901, about 8 o'clock or shortly be-
fore 8 o'clock, and only a short time before the opening of the Dis-
trict Court, in which court the case of Ignac Chernowsky v. William
Palm et al. was on trial, Ignac Chernowsky and John Bolton walked
into the saloon; Ignac Chernowsky called for the drinks, and he and
John Bolton took a drink together, after which they went out with
each other in the back yard behind the saloon. After remaining some
time they returned through the back door into the saloon, when Ignac
Chernowsky again set them up, one of them each time taking Hos-
tetter's bitters and the other whisky. There was no one in the back

yard at the time they reached it, and there conversation was not loud enough to be heard by any one on the inside. G. J. Sanders. Sworn to and subscribed before me this the 22d day of June, 1901. [Seal.] W. R. Manning, Notary Public."

"The State of Texas, County of Austin.—Before me the undersigned authority on this day personally appeared E. C. Ogg, who after being by me duly sworn on oath, says that he is the district clerk of Austin County; that on Thursday last after returning to the courthouse from dinner, and after the court had instructed the jury in the case of Ignac Chernowsky v. William Palm et al., and had directed them to return as soon as they had their dinner, and apply to him for the papers in the case, and that before all the jury had returned from dinner he saw one Adolph Wallecek lying on one of the benches in the courthouse room; afterwards Otto Ueckert, who was one of the jurors trying the said cause, came into the courtroom from the jury room, and immediately upon his entering the courtroom the said Otto Ueckert and the said Wallecek together went to the far corner of the courtroom, out of the hearing of those around and near the judge's stand, and out of hearing of any one in the courtroom at that time, where they remained conversing together for four or five minutes. Affiant further says, that he has reason to believe and does believe the said Wallecek was and is the friend of plaintiff and that he had been in the town of Bellville all during the trial of the said cause. E. C. Ogg. Sworn and subscribed before me this 22d day of June, 1901. [Seal.] W. R. Manning, Notary Public."

Neither the appellee nor either of the above named jurors filed any controverting affidavits or made any denial of the allegation of the motion. Appellee's attorney in answer to the motion filed an affidavit reciting in substance that the trial of the case lasted for several days, and that upon each adjournment of the court during the trial the jury were allowed to separate by consent of counsel for both parties, and were each time instructed by the court not to talk about the case themselves nor to permit anyone to talk to them concerning same."

We think the conduct of appellee and the juror Bolton was so flagrant a violation of the rules of propriety as to have justified the trial court, even with the fullest explanation on this and the most positive assurance that they had not violated the instruction of the court in regard to conversing about the case, in setting aside the verdict of the jury and granting a new trial of the case, and in the absence of such explanation and denial it was not only the right but the duty of the court to have set the verdict aside. While these affidavits do not show conclusively that the conversations referred to were concerning the case on trial, the suspicious circumstances under which they were had, coupled with the fact that there was no denial by any of the parties concerned of the direct charge made in the motion that such conversations were about the case, and that the motive and object of appellee and his friend in conversing with the jurors in regard to the case was

to improperly influence the verdict, fully justifies the conclusion that the mandate of the law and the instruction of the court on this subject has been violated. In the nature of things it would rarely happen that direct evidence showing a violation by a juror or a party to the suit of the instructions of the court in regard to conversing about a case on trial could be obtainable by the party alleging such improper conduct, and in most cases circumstantial evidence must be relied upon to support such charge. As before stated, we think the circumstances shown by this record are sufficient to sustain the charge.

We believe no authority can be found which questions the right of the court in such cases to set the verdict of the jury aside or which holds that it is not the duty of the courts to emphasize their condemnation of such practice by refusing to sanction a verdict obtained under such circumstances. Railway v. Schroeder, 25 S. W. Rep., 306; Marshal v. Watson, 40 S. W. Rep., 352; Railway v. Matthews, 4 Texas Ct. Rep., 152, and cases there cited.

In view of another trial we will not consider the assignment which challenges the verdict as being unsupported by the evidence.

There is no merit in appellee's contention that in no event could appellants recover in this case, because the property in question was shown by the facts to be the homestead of Metijka. Conceding for the sake of argument that such is the state of the evidence, appellee is in no position to assert the homestead rights of Metijka and wife against the claim of appellant Thompson. It is no concern of his, and only the parties in whom such right (if any) exists can be heard to assert same in this suit.

We are of opinion that the judgment of the court below should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*