**BEAUCHAMP et al. v. ZELLMER et al.*** 
**(No. 6336.)**

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1920. On Motion to Set Aside Judgment July 1, 1920. Rehearing Denied Oct. 13, 1920.)

**Vendor and purchaser** &#9750;265(2)—**Where lien is continued by recital in deed, it will prevail as against all grantees.**

Where purchaser by his deed acknowledged and continued in full force and effect a vendor's lien securing purchase-money note, neither he nor subsequent purchasers claiming under him with full knowledge of all the facts could deny the existence of the note, on the ground that it had been discharged, by merger in that it had come into the purchaser's possession.

Appeal from District Court, Bexar County.

Suit by L. Lasater and another against C. J. Zellmer and others, in which the Bank of Minden and Charles Glenk intervened, making J. R. Beauchamp party. From judgment rendered, J. R. Beauchamp and others appeal. Affirmed.

W. W. Ballew, of Corsicana, and Ward & Bickett and O. M. Fitzhugh, all of San Antonio, for appellants.

C. A. Davies and R. P. Coon, both of San Antonio, and R. L. Neal, of Waco, for appellees.

COBBS, J. We adopt appellants' statement of the case:

"This suit was originally instituted in Seventy-Third judicial district on April 4, 1913, by L. Lasater and L. Beauchamp, plaintiffs, against C. J. Zellmer, B. L. Herring, and R. H. Miller, defendants, to cancel a certain alleged vendor's lien note for $3,000, purporting to have been executed by B. L. Herring in favor of C. J. Zellmer, as part of the consideration and purchase price of certain lots situated in San Antonio, Tex., fully described in plaintiff's petition. And it was alleged that

&#9750;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 9, 1921.

said note was fraudulent and fictitious, and not a lien upon the property, and that B. L. Herring, the purchaser of said property and maker of said note, had made a fraudulent and fictitious transfer of same to R. H. Miller, and that all defendants were in collusion in the perpetration of said fraudulent note; that plaintiff L. Lasater was the owner of said land by purchase from B. L. Herring and L. Beauchamp, the holder of notes secured by deed of trust executed by Herring to Sidney Lansford before Herring transferred said notes to R. H. Miller. Thereafter, during June term, 1913, L. Lasater was, by order of court, dismissed from the case, and L. Beauchamp became sole and only plaintiff.

"The Bank of Minden intervened in said suit, and claimed to be the owner of the $3,000 note purporting to have been executed by B. L. Herring to C. J. Zellmer, and prayed for judgment against B. L. Herring, as maker, and C. J. Zellmer, indorser, for principal, interest, and attorney's fees, and foreclosure of vendor's lien upon the property, as against plaintiff, and all defendants and interveners." It denied all fraud in the purchase of the note. It averred that Zellmer, by executing the transfer of the note in blank, enabled B. L. Herring, as his agent, to sell and dispose of it for its full value, and by reason of his indorsement of the note guaranteed its payment, and by reason of which Zellmer is personally liable for its payment. It further pleaded under oath that the transfer of the Lansford indebtedness of $7,500 from B. L. Herring to L. Beauchamp was without consideration and void.

"And further, intervener says, if required to further answer, that the said C. J. Zellmer is estopped from denying the execution of the $3,000 note held by this intervener, and the said L. Beauchamp is estopped from denying the validity of said note or his liability thereunder or the liability of the land and improvements herein involved thereunder because the transfer from Herring to Lasater, and from Lasater to L. Beauchamp, and from L. Beauchamp to J. R. Beauchamp, of the equitable title to said property and improvements, was subject to the lien of the said $3,000 note, and was and became a part of the purchase money therefor, and the said L. Beauchamp is especially estopped from claiming any indebtedness under the said $7,500 Lansford note because the same was delivered to him for destruction and cancellation, without consideration, and came into his possession while he was the owner of the equitable title of the property, and by virtue thereof the said lien, even if it had a consideration, became null and void." It prayed for all relief, general and special.

"B. L. Herring answered by general exceptions and general denial.

"C. J. Zellmer filed original and numerous amended answers in which he pleaded that the $3,000 was fictitious and fraudulent, no part of the consideration for sale of his property to B. L. Herring; that same was without consideration, and his indorsement on said notes was obtained through fraud and misrepresentation, as was also a blank transfer of same.

"Chas. Glenk intervened, and claimed abstract of judgment lien upon the property, said judgment against B. L. Herring, and also made J. R. Beauchamp a party, as the owner of $7,500 note executed by B. L. Herring to Sidney Lansford, dated February 4, 1913, and secured by mortgage or deed of trust upon the lots conveyed by Zellmer to Herring. J. R. Beauchamp filed his answer, * * * and claimed to be the owner of first lien upon said property by virtue of his ownership of the three notes aggregating $7,500, secured by deed of trust upon said property to secure said notes, and executed by B. L. Herring to Sidney Lansford, assigned by Sidney Lansford to L. Beauchamp, and by L. Beauchamp to J. R. Beauchamp for valuable consideration before maturity, and without notice of any prior lien.

"The case was tried at June term, 1919. Chas. Glenk went out of the case upon exclusion of his alleged abstract of judgment, the objection of counsel for J. R. Beauchamp thereto being sustained. Herring made no defense. Before trial was finished, C. J. Zellmer, by consent and agreement of counsel and court, withdrew, and made no defense. The controversy narrowed down to the respective claims of the Bank of Minden to prior lien to secure the $3,000 note, and J. R. Beauchamp's claim to prior lien to secure his $7,500 note."

The case was tried by a jury, and the court instructed a verdict in favor of the Bank of Minden against B. L. Herring in the sum of $3,000, interest and attorney's fees, with foreclosure of its lien on the property against B. L. Herring, L. Beauchamp, and J. R. Beauchamp, and in favor of J. R. Beauchamp against B. L. Herring in the sum of $7,500, interest and attorney's fees, and in favor of said J. R. Beauchamp against B. L. Herring and L. Beauchamp on the property in controversy, subject to the lien of the bank of Minden to foreclose on the property in controversy. J. R. Beauchamp requested a special charge directing verdict in his favor, which was refused, and L. Beauchamp requested special charge, which was refused.

Assignments 1, 2, and 3 challenge the priority and validity of the $3,000 note held by the Bank of Minden for the reason that the note was executed by B. L. Herring in favor of C. J. Zellmer, and immediately indorsed by C. J. Zellmer back to the maker, B. L. Herring, and delivered to him with an assignment in blank, had the effect to discharge the note by merger, and alleging the Bank of Minden purchased said note from the maker, B. L. Herring, with full notice that said note was in the hands of the maker, which discharged and extinguished it as a matter of law.

It is shown by the evidence that J. H. Berry was the agent to sell the land in controversy for C. J. Zellmer. He negotiated a sale to B. L. Herring for the exchange of property between them. Zellmer took, in exchange for this land, notes and other land from Herring. On one piece of the land he was receiving there was a lien of $449 that Herring was to discharge, and there was on his land a lien of $1.000 due the State Bank & Trust Company, which Herring assumed.

Berry, representing Zellmer, arranged the trade in the following manner: A note was to be executed by Herring to Zellmer for $3,000, secured by a vendor's lien on the land, and that note was to be negotiated and out of the proceeds pay $449 cash to Zellmer to discharge a lien on some of the land Herring was selling him, and pay $1,000 to release the lien on the land securing $1,000 due State Bank & Trust Company on Zellmer's land. The note was indorsed by Zellmer, and a transfer of the lien was signed in blank by Zellmer. Zellmer was unwilling to do this at first and protested thereat, but, as Herring would not trade any other way, and when made to believe he would not be made to pay it, finally consented to do so.

Herring and L. Beauchamp, having a business matter with the Minden bank, induced Mr. Miller, the cashier of the Minden bank, to meet them in Shreveport, La., when they settled their matters. Then Herring sold the note to Mr. Miller for his bank and delivered to him the note and transfer, paying Herring by placing $1,000 for State Bank & Trust Company and $2,000 to credit of W. L. Herring in the bank. This was all known to L. Beauchamp at the time. The deed from Zellmer to Herring recites consideration $13,500. Of that, $450 cash, a number of vendor's lien notes; the assumption of the $1,000 State Bank note and lien, and the note of $3,000, secured by vendor's lien on the land, being note in controversy.

Herring sold this land to Mrs. L. Lasater, subject to this $3,000 note, which is the note in this suit, with other notes described in the same way in the deed. It recites $10 consideration and "subject to the following incumbrances," and impresses a vendor's lien on the land in the following words:

"Expressly agreed and stipulated that the vendor's lien note is retained against the above-described property, premises, and improvements until the above-described notes and all interest thereon are fully paid according to their face and tenor and effect and reading, when the deed shall become absolute," dated February 18, 1913.

This recital embraces the $3,000 note. The statement of facts contains a mere statement:

"Plaintiff introduced in evidence a quitclaim deed of Lasater conveying the property involved in this case to L. Beauchamp."

We gather nothing from this except we may infer that the recitals and consideration in the two deeds are the same. On the 4th day of February, 1913, E. L. Herring executed his deed of trust on this land to secure the payment of his three notes to Sidney Lansford, one for $1,200, dated February 4, 1912, and two notes each to Sidney Lansford for $3,150, dated February 4, 1913. The notes and deed of trust were prepared by Robt. P. Coon and acknowledged before him as a no-

tary public, and never filed for record until the 2d day of January, 1917. On the 8th day of March, 1913, Sidney Lansford, without recourse, transferred these notes for $7,500 to L. Beauchamp without naming any consideration other than a valuable consideration. Likewise acknowledged before Robt. P. Coon. And on the 10th of April, 1913, L. Beauchamp for a recited consideration of $7,500 transferred said notes and the land to J. R. Beauchamp.

It was shown by Robt. P. Coon:

That he prepared the papers and notes embracing the $7,500 and deed of trust securing them between B. L. Herring and Sidney Lansford for the purpose of securing money in the open market, and no consideration passed between them in respect to the notes, and subsequently they agreed to tear them up. "With reference to what was said by Beauchamp and Lansford and Herring at the time they agreed to destroy the $7,500 notes, they came to my office, Mr. Lansford and Mr. Herring and Mr. Beauchamp together. Mr. Herring had the notes in his hands, and Mr. Herring said that the notes was to be destroyed and started to tear them up. Mr. Beauchamp insisted that they be turned over to him; that he wanted to destroy them himself, and he would then know they were destroyed. Mr. Herring said that he had conveyed the property to Mr. Beauchamp, and that the notes were not to be used at all; there was no consideration for them. Yes; Mr. Beauchamp was present and heard that conversation. Sidney Lansford and B. L. Herring were swapping notes there during a period of a couple of months. I drew papers for them. They would swap notes and lands back and forth, Mr. Beauchamp and Lansford and Herring, every few days, but I couldn't say; they made a good many transactions between them."

Even though the note was sold by Herring to the Minden bank, the effect of which, appellant contends, was to discharge the note, citing especially, as authority for that contention, Smith v. Cooley, 164 S. W. 1051, he is estopped to rely on that doctrine, as by his own deed above shown he acknowledged and continued the lien securing that note in full force and effect, and all those holding under him are bound by his obligation, having full knowledge of all the facts.

The same rule would apply to Herring, who sold to Lansford without consideration; the purpose being to borrow money on them, and they were delivered to Herring for that purpose. They held the notes for $7,500, the obligor and obligee, and Beauchamp, and, not having negotiated, agreed to destroy them.

These notes never got into the hands of an innocent purchaser for value. They could not in view of the recitals, and obviously this whole transaction between them concerning the $7,500 transaction was to defeat the Minden bank, the only one who put out any real money in the transaction.

In Peters v. Clements, 46 Tex. 123, it is held:

"It is an elementary principle, than which none is better established, both by reason and authority, that subsequent purchasers are bound by the recitals in the deeds through which they claim, and are held to have had notice of whatever equities are apparent in the line of their title. Carver v. Astor, 4 Pet. 1; Brush v. Ware, 15 Pet. 93; Scott v. Douglass, 7 Ohio, 228; Cordova v. Hood, 7 Wall. 1."

See Polk v. Chaison, 72 Tex. 500, 10 S. W. 581; Jumel v. Jumel, 7 Paige (N. Y.) 594; Engelbach v. Simpson, 12 Tex. Civ. App. 192, 33 S. W. 598.

"It is true that a payment discharges a vendor's lien, and a delivery of the note may be evidence that the debt and lien are extinguished, and, when considered in connection with the deed conveying the land in which the lien is retained, will be evidence that the vendor has parted with all title, and that the superior title is in the vendee. But, as said in Halfin v. Winkleman, 83 Tex. 165, a possession of a vendor's lien note by the vendee is not conclusive evidence of payment, and that the lien has been satisfied, and the presumption and inference that arises in such a case may be rebutted. To the same effect is Flower v. Elwood, 66 Ill. 439."

It is claimed by appellants that the note of $3,000 held by Minden bank was never intended to be a valid obligation, because delivered to the maker to sell to secure the purchase money agreed upon by the parties, and cite in support thereof to sustain the position, Smith v. Cooley, 164 S. W. 1050, and Tex. Land Co. v. Cooper, 28 Tex. Civ. App. 405, 67 S. W. 165. The effect of these holdings, as shown, is that the possession of the note by the maker is prima facie evidence only of its payment, subject to be overcome by proof of the real facts.

The appellant urges that Smith v. Cooley, supra, is authority for his proposition that, when Zellmer delivered the note to Herring, the maker, to sell for the purpose of raising money to pay the agreed purchase price, it was such a merger of the legal and equitable title as to declare eo instanti a legal satisfaction of the debt. The court does not hold any such doctrine in the cited case, but holds a note taken under such circumstances "is not taken in due course of business, and it would be the duty of the purchaser to inquire." See page 1054. The court further holds that such bills and notes may thereafter be negotiated, as they will not prejudice any other person, and will only charge themselves.

With full knowledge of all the facts, L. Beauchamp thereafter purchased the land and continued as a part of the consideration the $3,000 as a valid vendor's lien on the land. This language is found expressed in Herring's deed above mentioned to L. Lasater, under whom appellants hold and claim title. First Nat. Bank v. Rice-Stix Dry Goods Co., 213 S. W. 348. As said in Hancock v. Fleming, 103 Ind. 535, 3 N. E. 255:

"The difference between the purchaser's assuming the payment of the mortgage and simply buying subject to the mortgage is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability. In both cases he takes the land charged with the payment of the debt, and is not allowed to set up any defense to its validity. Jones, Mortg. § 736; Atherton v. Toney, 43 Ind. 211; Pom. Eq. Jur. par. 1205. The land, nevertheless, remained the primary fund, as between the purchaser and the mortgagee, out of which payment of the debt must be made. The grantees having presumably retained the amount recited out of the purchase price, they were estopped from disputing the validity of the mortgage, or that the amount of the debt was not the sum recited. Moreover, they could do nothing thereafter which would render the mortgage ineffectual as a valid lien upon the land as respects the right in which they held it."

There is no fact shown from the evidence in respect to the conduct of appellants in this case, relating to the transaction between them that greatly appeals to the equitable powers of the court, or that would have justified the court in giving, if it had, the requested charge. Peerless Fire Ins. Co. v. Reveire, 188 S. W. 254.

Both parties requested charges instructing verdicts, upon the theory that the evidence was undisputed.

The court did not err in instructing the verdict for appellee.

There is no complaint made as to the judgment in favor of J. R. Beauchamp against B. L. Herring for $7,500, interest and attorney's fees, against all except the Bank of Minden.

The assignments all raise practically the same question and have been examined and considered, and are overruled.

The judgment of the court is affirmed.

### On Motion to Set Aside Judgment.

The appellees have filed a motion seeking to set aside our judgment granting a rehearing and reversing the judgment of the trial court. In this motion it is earnestly contended that the conflicts in the evidence relate to immaterial matters, and that appellee was entitled to the instructed verdict upon the theory that the undisputed facts showed that the $3,000 note is a valid obligation and lien, and that, the deed reciting an express lien to secure said note having been recorded at once, there can be no issue of notice. An answer to this motion has been filed, in which it is practically conceded that, if the note constitutes a valid obligation by reason of the facts incident to its execution and negotiation, the appellees' contentions must be sustained.

We have again considered the evidence, and have reached the conclusion that appellees' theory is correct, and that the conflicts in the main relate to issues which

need not be considered. While there are some conflicts with regard to the facts and circumstances relating to the execution and negotiation of the $3,000 note, they are between testimony given by Zellmer and his agent, Berry, and relate to whether Zellmer was fully informed by his agent of what the latter had agreed to with Herring. We find no evidence which would charge Herring with any fraud in securing or negotiating the note. The facts, briefly stated, are: A written contract was entered into between Zellmer and Herring in which the terms were as finally stated in the deed with the exception that there was no mention of any $3,000 note. Herring declined to close the deal upon the terms stated in the contract, and he and Berry, who was Zellmer's agent, agreed upon different terms, whereby there was included in the consideration to be mentioned in the deed a note for $3,000 executed by Herring to Zellmer, and a lien was expressly retained in the deed to secure the payment thereof, Zellmer executed this note, but testified he did not know of the recitals concerning the note. It was also agreed between Berry and Herring that the $3,000 note was to be delivered to Herring for negotiation, and the proceeds applied in satisfaction of the $1,000 lien against the land, of which payment had been assumed by Herring, the payment to Zellmer of the cash consideration recited in the deed, and the expenses incident to carrying through the deal. While Zellmer denied knowledge of this agreement made by his duly authorized agent, he indorsed the $3,000 note in blank, let Berry have possession thereof, and executed and acknowledged a transfer in blank of said note and let Berry have possession of it. His only contention was that his agent represented to him, in effect, that the note would become a nullity when it passed into Herring's hands, but he does not claim that Herring misrepresented anything to him. He said Herring told him he wanted the transaction to embrace the $3,000 note so he could sell the land for a higher price, but does not testify that Herring made any representations to the effect that the note was not intended to be negotiated. The note and the transfer in blank were delivered by Berry to Herring, and by the latter the note was negotiated for a valuable consideration to the Bank of Minden; the blank transfer being duly filled out. Zellmer, through Berry, received the cash consideration out of the proceeds, and the $1,000 note was also duly paid out of the same. He frankly admitted that Berry was his duly authorized agent to make the deal with Herring, and he cannot escape liability for his acts in executing the instruments and authorizing his agent to turn them over to Herring for negotiation, because of any erroneous information given him by Berry as to the legal effect of the transaction. The evidence relating to notice is as follows:

"The $3,000 note was executed and was dated February 1, 1913, and the deed retaining a vendor's lien on said property to secure said note was filed for record on February 3, 1913, and duly recorded in the deed records of Bexar county, Tex.

"On February 4, 1913, said Herring executed to Sidney Lansford the $7,500 notes in controversy, and gave a deed of trust on the property in controversy. This deed of trust was not placed of record in Bexar county until January 2, 1917.

"On February 10, 1913, said Herring, acting under an arrangement with said J. H. Berry, agent for Zellmer, sold the $3,000 note to the Bank of Minden for $3,000, having himself credited with $2,000, and placed $1,000 subject to the draft and order of the said State Bank & Trust Company to cover the said Zellmer $1,000 lien, and gave his check on the $2,000 left to his credit for the sum of $464, out of which was paid said cash consideration recited in the Zellmer-Herring deed and some $15 expenses in making the trade.

"The deed from Herring to Lasater was dated February 18, 1913, and was given to Lasater subject to the two liens, the one for $3,000, and the other for $7,500, covering the three notes claimed by J. R. Beauchamp, the priority of the liens being recorded in the instrument itself.

"The Bank of Minden bought the said $3,000 note on February 10, 1913.

"L. Beauchamp filed suit to cancel the $3,000 note on April 4, 1913, and so informed J. R. Beauchamp, prior to J. R. Beauchamp's purchasing said $7,500 notes from L. Beauchamp.

"Afterwards, on April 11, 1913, L. Beauchamp bought the land in controversy from L. Lasater, subject to all the liens. At the time of said purchase L. Beauchamp knew the $3,000 note was outstanding against said property.

"L. Beauchamp sold J. R. Beauchamp, his father, said $7,500 notes on April 9, 1913. At the time of said purchase J. R. Beauchamp had an abstract of title to the property in controversy. J. R. Beauchamp had his attorney examine and pass upon the abstract to the property in controversy, and this was done before he purchased said notes, said abstract showing:

"(a) Deed from C. J. Zellmer to B. L. Herring of date February 1, 1913, filed for record February 3, 1913, in Bexar county, Tex., and fully set out on page 11 of statement of facts.

"(b) Deed from B. L. Herring to L. Lasater dated February 18, 1913, which deed is fully set out on pages 28–29–30 of the statement of facts.

"Said abstract also showed the filing of the suit by L. Beauchamp to cancel said $3,000 note, and J. R. Beauchamp was notified of the $3,000 lien by the telegram from Frank Newton, county clerk of Bexar county, Tex., to said J. R. Beauchamp's attorneys, on March 17, 1913."

Zellmer acted through his agent and secured the money from the Minden bank and got the prior lien on the land released due

securing the note of $1,000 paid off and the balance of the $3,000 paid him, less Berry's commission.

Upon full consideration of all the facts, we have reached the some conclusion as we did originally. Whatever apparent conflict there may be in any of the testimony between any of the statements, they are not material and are unavailing to benefit appellant, and he is in no position to claim any benefits therefrom.

As between him and the Minden bank, the note for $3,000 is a binding obligation, prior and superior to his notes.

We therefor grant appellees' motion, set aside our judgment granting a rehearing, and reinstate our original opinion and judgment, and affirm the judgment of the trial court.