Mrs. Lorena Bates SMITH, Appellant,

v.

Mrs. Bessie SELZ et al., Appellees.

No. 16663.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 8, 1965.

Supplemental Opinion Oct. 29, 1965.

Rehearing Denied Nov. 19, 1965.

Turner, Atwood, Meer & Francis, and Dean Carlton, Aubrey J. Roberts, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, and Frank Finn and George C. Chapman, Dallas, Gray & Beadle, and Jack Gray, Fred H. Minor, John L. Sullivan, Denton, for Mrs. Bessie Selz and others, appellees.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellee Betty Joe Morris.

MASSEY, Chief Justice.

This is an appeal by Mrs. Lorena Bates Smith from a judgment in favor of the

Estate of Leo V. Selz for damages growing out of personal injuries to Leo V. Selz during the six months period following an automobile collision in which he sustained injuries and in favor of Mrs. Bessie Selz, his widow, for damages under Texas' Wrongful Death Statute accruing as the result of Selz' resulting death.

Judgment in favor of Mrs. Selz affirmed. Judgment in favor of the Selz Estate affirmed upon condition of remittitur.

Important to the discussion warranted by points of error are two special issues in answer to which the jury found amounts of damage accruing to the Leo V. Selz Estate and to Mrs. Selz, the surviving wife. They read as follows:

"SPECIAL ISSUE NO. 31

"What amount of money, if any, do you find from a preponderance of the evidence would, if paid now, reasonably compensate Mrs. Leo V. Selz for the loss sustained by her as a result of the death of Leo V. Selz?

"In arriving at and determining your answer to the foregoing question you may take into consideration loss of maintenance and support, if any, services, if any, contributions from his earnings, if any, care and counsel, if any, that Mrs. Leo V. Selz would, if she would have, in reasonable probability received from her husband during his lifetime had he lived. You must not take into consideration nor allow any sum to Mrs. Leo V. Selz, for her grief and sorrow suffered on account of Mr. Selz's death, or loss of society, affection, companionship or physical and mental pain suffered by her husband.

"Answer by stating amount, if any, for each of the following:

| | | |
|---|---|---|
| "1. | Loss of maintenance and support, if any. | $10,000.00 |
| "2. | Services, if any. | $ 2,500.00 |
| "3. | Contributions from his earnings, if any. | $10,000.00 |
| "4. | Care and counsel, if any. | $ 2,500.00 |
| | "TOTAL | $25,000.00 |

"SPECIAL ISSUE NO. 32

"What amount of money, if any, do you find from a preponderance of the evidence would, if paid now, reasonably compensate the Estate of Leo V. Selz, deceased, for such alleged injuries and damages, if any, as you may find from the evidence to have been sustained by Leo V. Selz, deceased, and Leo V. Selz Estate, proximately caused by the collision here in question?

"In answering this question you may take into consideration and allow the Estate of Leo V. Selz whatever amount of money you may find would fairly and reasonably compensate Leo V. Selz for whatever physical pain and suffering, if any, and mental pain and suffering and anguish, if any, which he underwent to the date of his death as a result of injuries sustained by him in the collision here in question. And if you further find from a preponderance of the evidence that Leo V. Selz was prevented from working and earning money by reason of the injuries received by him in the collision in question, you may allow such a sum of money as would fairly and reasonably compensate Leo V. Selz for whatever amount you may find, if any, he would have earned from the time of such collision up to the date of his death. You may further find whatever amount you may find from a preponderance of the evidence Leo V. Selz paid or became liable to pay or the Estate of

Leo V. Selz paid or became liable to pay for hospital bills, if any, damage to his automobile, if any, and funeral expenses, if any, but only in such amount as you may find to have been reasonable and necessary.

"Answer by stating amount, if any, for each of the following:

"1. Leo V. Selz's physical pain and suffering, if any. $25,000.00
"2. Leo V. Selz's mental pain, suffering and anguish, if any. $25,000.00
"3. Lost earnings to the date of Leo V. Selz's death, if any. $ 2,412.50
"4. Hospital bills, if any. $ 1,200.00
"5. Automobile damage, if any. $ 1,500.00
"6. Funeral expenses, if any. $ 1,262.50

"TOTAL $56,375.00."

———◆———

One basis of complaint by Mrs. Lorena Bates Smith is that there was no instruction given as part and parcel of the quoted special issues which required the jury, as a condition upon which its answers were to be returned, to find whether Selz' death and the pain and suffering experienced prior to death were proximately caused by injuries sustained by him in the automobile collision. The contention of Mrs. Smith is that such was a question of fact and not of law.

■ In our view of the evidence the question was not one of fact, but was established as a matter of law that the damages he sustained prior to his death, and the damages accruing to his surviving widow as the result of his death, proximately resulted from the collision. However, and in any event, there was no objection made to the court's charge because of the failure of the trial court to submit the questions as to proximate cause of injury and of death to the jury in a special issue or issues. Assuming the questions were questions of fact, and as such constituted matter upon which independent special issues should have been submitted, such omitted issues would for that reason be deemed as found by the trial court in such manner as to support the judgment under the provi-sions of Texas Rules of Civil Procedure 279.

■ Furthermore it is to be noticed that the form of Special Issue 32 inquired as to injuries and damages which proximately resulted from the collision up until the time of death. There was no necessary assumption by the jury that Selz' death had been the proximate result of the collision. The form of the issue was not such as informed the jury that they should treat his death as having thus proximately resulted. It was neither a comment on the evidence nor a charge on the weight of the evidence.

Another complaint because of the wording of Special Issues Nos. 31 and 32 was that there was no affirmative exclusion of amounts "for any pre-existing heart condition or known physical disability on the part of the deceased", and/or "for death or other diseases resulting from a pre-existing heart disease or other physical impairment of Leo V. Selz." The theory upon which these objections were made to the court's charge was that there was evidence of the existence of heart trouble, disease, or impaired condition of the heart independent of any injured and impaired condition proximately caused by injuries sustained in the collision, which the jury might

have found and believed to have caused, or contributed to cause, Selz' disability, suffering, and ultimate death. For that reason Mrs. Smith insists there was error in omitting instructions that such be taken into consideration by the jury in arriving at answers to be returned to the special issues.

From our review of the record in the case we have concluded that there was no such evidence, at least none which had probative value. The evidence to which Mrs. Smith directs our attention in connection with her complaint is contained in the medical and hospital records introduced into the record by Mrs. Selz and the Selz Estate as "business records", under Vernon's Ann. Civ.Tex.St. Art. 3737e, "Memorandum or record of act, event or condition; * * *."

■ One section of such records relates to condition of the deceased while he was in the hospital on March 30, 1962 to April 4, 1962, both dates inclusive. On the page containing part of the nurses' notations for the first day the date is shown as "3/30/61" instead of the obviously correct date of "3/30/62". This obvious error is wholly disregarded. In another section of such records is found the "Past History" notations made in connection with the admission into the hospital on March 30, 1962. After language mentioning the previous admission of the patient immediately following the prior admission to the hospital after the automobile collision, February 8, 1962, with statement of his condition at that time, the language of the notation continued, as follows: "There is a question about the patient having a mild coronary thrombosis in 1956 however this is very questionable." In our opinion the language of the notation quoted does not qualify as evidence that the deceased had a coronary thrombosis in 1956. In any event it would only be a scintilla of evidence, having no probative force and effect. Furthermore it would not qualify as evidence under Art. 3737e because it would not be a record of an act, event, or

condition contemplated by the language of the statute.

■ Another section of such records relates to the hospitalization of the deceased from the day of the collision, February 8, 1962, to and inclusive of February 21, 1962. Therein this statement appears: "This patient is reported to have had a very mild myocardial infarction in 1953. He has been well since that time." What we have said heretofore, concerning the qualification of the other statement appearing in the hospital records, has full application to this portion of the records. Furthermore, by the words "is reported" in the first sentence quoted, it is made evident that the entire sentence constitutes "hearsay" and as such is without probative force and effect.

■ Finally, and having application only to Special Issue No. 31, is the complaint that the issue as framed does not limit the finding concerning the loss to Mrs. Selz as the result of the death of her husband to her "pecuniary" loss. In our opinion the instruction to the jury included such limitation in the language: "You must not take into consideration nor allow any sum to Mrs. Leo V. Selz, for her grief and sorrow suffered on account of Mr. Selz's death, or loss of society, affection, companionship or physical and mental pain suffered by her husband."

In connection with what we have held hereinabove, it is to be noticed from Mrs. Smith's pleadings that no part thereof included any allegations having relation to opposing pleadings concerning the cause of deceased's pain and suffering, etc., damages prior to his death, nor as to the cause of death, other than connoted by her general denial.

At the time when most of the evidence had been introduced an event occurred which amounted to error. From our review of the state of the record as a whole we have concluded that it was not such error as was reasonably calculated to cause and

probably did cause the jury to return an inhibited verdict. In other words the error did not amount to reversible error within the requisite of T.R.C.P. 434 and 327. These rules have application and are controlling.

The court was in recess. In a witness-room across the hall from the courtroom Mrs. Selz (widow of the deceased), and her daughter-in-law, and Betty Jo Morris, and Miss Morris' father were cast in a situation where they were in communication with certain of the jurors in the case. Betty Jo Morris was a young woman who was a defendant in the case, but who was acquitted of liability by jury findings of which no complaint is made on this appeal. Her father was a witness who had testified on trial. The record is clear that none of the aforementioned parties initiated an approach to any juror so that any communication was invited. Furthermore, the evidence establishes that nothing said during the course of the communication had any relation to the issues on trial. The only evidence was from the aforementioned parties and from the Bailiff in charge of the jury in the case and was introduced before the trial continued. On the motion for new trial there was no affidavit attached thereto in affirmation of jury misconduct, and no tender of evidence from anyone upon the matter. Mrs. Smith's theory of reversible error is wholly cast upon the theory that there had been improper communication, a matter conceded, and that prejudice to her interests in the matter on the trial resulted therefrom, a matter in dispute.

 One of the best statements of the meaning of the rules in their application to a question such as that posed is in Cloudt v. Hutcherson, 175 S.W.2d 643, at page 649 (El Paso Tex.Civ.App., 1943, writ ref. w. o. m.). In the instant case Mrs. Smith necessarily bore the burden to show that the proven misconduct resulted in probable injury. We hold that she did not discharge this burden of proof.

The matter is discussed in 41 Tex.Jur.2d, pp. 163–179, incl., secs. 60 to 68. See also 55 A.L.R. 750, supplemented in 62 A.L.R.2d 298, Annotation: "Contact or communication between juror and party or counsel during trial of civil case as ground for mistrial, new trial, or reversal." Texas cases in which communications have been held harmless include: Swanson v. Fort Worth Transit Co., 209 S.W.2d 772 (Fort Worth Tex.Civ.App., 1948, no writ hist.); Smith v. Travelers Ins. Co., 205 S.W.2d 432 (Texarkana Tex.Civ.App., 1947, ref. n. r. e.); Insurors Indemnity & Ins. Co. v. Brown, 172 S.W.2d 174 (Beaumont Tex.Civ.App., 1943, refused); Oliphant v. Buie, 134 S.W. 2d 751 (Waco Tex.Civ.App., 1939, Dism., Judgm. Cor.). Texas cases in which the circumstances have been deemed prejudicial include: Wallis v. Long, 75 S.W.2d 138 (Galveston Tex.Civ.App., 1934, refused); Galveston, H. & S. A. Ry. Co. v. Krenek, 138 S.W. 1154 (Austin Tex.Civ.App., 1911, refused); Palm v. Chernowsky, 28 Tex.Civ. App. 405, 67 S.W. 165 (1902, no writ hist.); Gulf, C. & S. F. Ry. Co. v. Matthews, 28 Tex.Civ.App. 92, 66 S.W. 588 (1902, no writ hist.); Larson v. Levy, 57 S.W. 52 (C.C.A. of Texas, 1900, no writ hist.); Gulf, C. & S. F. Ry. Co. v. Schroeder, 25 S.W. 306 (C.C.A. of Texas, 1894, no writ hist.). It is noticed that some of these decisions antedated the effective date of our Rules of Civil Procedure.

By a final group of points of error, Mrs. Smith contends that the amounts found by the jury as loss and damage sustained by Mrs. Selz, the widow of the deceased, and by the Leo V. Selz Estate are excessive. In connection with our consideration thereof we will consider the jury findings in Special Issues Nos. 31 and 32 separately.

 The deceased was shown to have had a life expectancy of approximately ten (10) years at the time of his death. The life expectancy of his widow was not shown, however there is nothing in the presentation of Mrs. Smith which bases any portion of her complaint upon the absence of

such proof. In view thereof we are entitled to presume, and will, that there is no question but that Mrs. Selz would have probably lived at least as long as her husband had the collision not occurred. It is to be observed that the evidence showed that the deceased would in all probability have continued in his employment for the same employer, for whom he had worked practically his entire adult life, for the entire period of his life expectancy. Furthermore, it shows his income from personal services in such employment as of the time of the collision in question, and that in reasonable probability his salary would have continued at the same, or perhaps an enhanced amount during the years he might have worked for such employer. The total of the amounts found by the jury as to Mrs. Selz' loss of maintenance and support and contributions from his earnings was approximately one-half the total salary he would have earned, if neither increased nor decreased as to rate of pay, during the years of his life expectancy. The married couple had been living together for many years, Mrs. Selz being supported by her husband, and presumably this situation would have continued the balance of his life. Under this state of the evidence the amounts allowed for the aforementioned items of loss and damage were not excessive.

There is no specific complaint of the $2,500.00 allowed Mrs. Selz for loss of services of her husband, nor of the $2,500.00 for loss of his care and counsel. In any event we consider these findings reasonable and not excessive.

In connection with the jury's findings in answer to Special Issue No. 32, the complaint is confined to the findings that for the approximate six months' period during which Selz lived—between date of the collision and date of his death—he had physical pain and suffering in the amount of $25,000.00, and mental pain, suffering and anguish in the amount of $25,000.00. The total thereof is $50,000.00. In connection therewith we are in agreement with the contention that these findings are excessive and that the judgment in the case, in so far as it is based upon the findings of damages in said amounts, may not be sustained.

It must be remembered that the deceased was a man approximately 70 years of age, in good health, who received injuries occasioning his death approximately six months thereafter. Death occurred following a "seizure" while visiting in Bridgeport, Texas, on August 25, 1962—death ensuing on August 27, 1962.

In the examination of Mrs. Selz she was asked about the "seizure". She testified that inception thereof was at night after the couple had gone to bed, about 10:30 or 11:00 o'clock in the evening. Her husband was sweating, his skin was clammy, and he was breathing hard—gasping for breath. He was removed to the hospital where he died. Mrs. Selz further testified that the attack was "just like" the prior attack about the middle of 1962 at their home in Denton County, Texas, and at the same place in March of 1962. Concerning the attack in March Mrs. Selz testified that her husband "couldn't get his breath; he struggled for breathing and perspiration stood out all over him. He couldn't lie down; he just begged for help." She testified that on the occasion of each attack her husband's "seizure" was worse than the last. She did not testify concerning the duration of the attacks.

The night of March 29–30, 1962 the deceased's attendant physician was called to the house following a "seizure" of the type about which the widow testified. Selz was ordered admitted to the hospital in Denton, Texas, and was received there at 1:45 o'clock A.M. He is not shown to have received medication to relieve pain until during the tenth hour of his confinement. The records show that he slept soundly between 3:00 A.M. and 5:00 A.M. The following night he was quiet and slept soundly. This favorable result seems to have continued until he was dismissed the morning of April 4, 1962. It is indicated that afterward, except on the occasion of the "seizure" in

midsummer, Mr. Selz was ambulatory. Indeed, he worked two days at his regular employment during this period.

The deceased had theretofore been confined for a period of thirteen days immediately following the collision on February 8, 1962, being dismissed on February 21, 1962. Upon admission to the hospital he had multiple abrasions and contusions to his back, of which no further notice need be taken. Relative to his abdomen, the following was recorded: "There is marked tenderness in the epigastrium. Partial outline of the steering wheel can be seen over the patient's lower chest and upper abdomen. There is no tenderness or rebound tenderness in the lower quadrants of the abdomen and bowel sounds are normal. No evidence of hernia." The "final diagnosis" noted on the record made on discharge included the following: "Passive congestion of heart. Contusion of Myocardium." On the "progress notes" for the date of February 15, 1962 it is shown that "Repeat X-Ray shows pulmonary edema. Pt. in very mild failure." On the record it is shown that as of February 11th, 1962 the patient was allowed to ambulate to the bathroom and sit up in a chair. Apparently this permissive activity was allowed between this date and the time of discharge from the hospital on February 21st, 1962. On the "Nurses notes" for February 8th it is noted that the patient rested "fairly well"; that he had a "fairly good evening with some generalized soreness." On the afternoon of February 10th appears the notation: "No complaint of severe pain"; and for the evening the notation: "No complaints of pain." This favorable condition continued until the time of discharge "via wheel chair" on February 21, 1962.

From all the evidence it appears that after the occasion of the hospitalization of the deceased in February of 1962—during which he had no "seizure" as the result of the condition in the chest cavity and in the lungs called pulmonary edema (a filling thereof with body tissue fluids), which in turn was the result of inadequate functioning of the heart as the result of the injury thereto in the collision—he experienced his first "seizure" in March of 1962. For this he was hospitalized six days, during which time treatment caused or allowed the heart to sufficiently function or "compensate" so that in its circulating the bodily fluids it controlled the pulmonary edema. At least the amount and degree of the condition of edema was so minimized that the physical, mental and emotional effects of the typical "seizure" resultant therefrom ceased to be experienced. Another such occurrence took place in June or July of 1962, but was controlled by treatment in the home so that hospitalization was not required. The final "seizure took place the late evening of August 25, 1962. He was removed to the hospital in Bridgeport, Texas the early morning of August 26, 1962, where he remained until time of his death—thirty-four or thirty-five hours later—on August 27, 1962. The only evidence relative to the pain experienced on the occasion of the final "seizure" would be that found in the testimony of Mrs. Selz, wherein she stated that each time he experienced such it was worse than the time before.

Relative to the pain and mental distress experienced by a person with such a condition, the deceased's personal physician testified as follows:

"Q. Doctor, I believe you stated just a moment ago that a person is in a great mental distress on those occasions?

"A. That is true.

"Q. Do they undergo or not, undergo a great deal of pain and suffering in that type of condition?

"A. Not necessarily pain. Pain may or not be present; it depends on the condition that causes the pulmonary edema to develop.

"Q. Well, in gasping for breath and shortness of breath, does that cause physical distress?

"A. Very great.

"Q. And what is the situation with respect—I believe you mentioned a moment ago that they were worried. What with respect to mental distress?

"A. A person in this condition has the feeling of impending doom, the feeling that they are going to die, that they are not going to be able to get enough air, to get enough oxygen."

■ In view of our consideration of the testimony bearing upon the physical pain and suffering and the mental pain, suffering, and anguish of the deceased we have arrived at the conclusion that the maximum amount allowable because thereof, considered collectively, would be $20,000.00. In other words the verdict of the jury in favor of the Estate of Leo V. Selz, deceased, was excessive in the amount of $30,000.00. The judgment in favor of such Estate and against Mrs. Lorena Bates Smith should therefore have been in the amount of $26,375.00.

■ From analysis of the entire record, we do not believe that the jury was motivated by any passion or prejudice, or other improper motive in arriving at the figure. There is no indication thereof other than to be found in the amounts awarded for the elements discussed. Rather, we are of the opinion that the evidence does not support the finding of the jury in connection with the elements we have discussed, nor the judgment thereon entered—along with other elements of damage—except in the maximum amount of $26,375.00. It follows, therefore, that the trial court, by eliminating the "excess" from answers returned, should have required a remittitur in such amount as would be requisite to reduce the judgment in favor of the Leo V. Selz Estate to the aforesaid figure, $26,375.00. For discussion of propriety for an appellate court to order

remittitur see Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 259, 288 S.W. 425, 430 (1926) answering certified questions.

The judgment in favor of Mrs. Bessie Selz against Mrs. Lorena Bates Smith is affirmed.

The judgment in favor of the Estate of Leo V. Selz, deceased, against Mrs. Lorena Bates Smith is reversed and remanded for another trial, subject to an affirmance on condition that within fifteen days from date hereof it file remittitur reducing recovery awarded by the judgment of the trial court to the amount of $26,375.00.

## SUPPLEMENTAL OPINION

On October 8, 1965, we indicated by our opinion in writing that if appellee Estate of Leo V. Selz would file remittitur reducing the amount of recovery awarded to the sum of $26,375.00 within fifteen days thereof, the judgment of the trial court would be affirmed; otherwise the judgment of the trial court in favor of said appellee would be reversed and the cause (as to it) remanded.

Within said period of fifteen days Mrs. Leo V. Selz, as Independent Executrix of the Estate of Leo V. Selz, deceased, did file the remittitur indicated.

Accordingly, as of this date judgment of the trial court is reformed and affirmed. As affirmed the judgment in favor of Mrs. Bessie Selz against Mrs. Lorena Bates Smith is for recovery of damages in the amount of $25,000.00; and in favor of the Estate of Leo V. Selz, deceased, against Mrs. Lorena Bates Smith is for the recovery of damages in the amount of $26,375.00.

Motion for rehearing may be filed by any party to the appeal within fifteen days after this date.